UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION,<br>100 F. Street, NE<br>Washington, D.C. 20549<br><br>Plaintiff,<br><br>v.<br><br>INNOSPEC INC.<br>Innospec Manufacturing Park<br>Oil Sites Road<br>Ellesmere Port<br>Cheshire<br>United Kingdom<br><br>Defendant. | Civil Action No.<br><br>10 0448 *pmc* |

## FINAL JUDGMENT OF DEFENDANT INNOSPEC INC.

The Securities and Exchange Commission having filed a Complaint and Defendant Innospec Inc. ("Defendant" or "Innospec") having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except, solely for purposes of this action, as to jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 30A of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78dd-1] by use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of any offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to—

(1)  any foreign official for purposes of—

(A)(i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official, or (iii) securing any improper advantage; or

(B) inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality, in order to assist Defendant in obtaining or retaining business for or with, or directing business to, any person;

(2)  any foreign political party or official thereof or any candidate for foreign political office for purposes of—

   (A)(i) influencing any act or decision of such party, official, or candidate in its or his official capacity, (ii) inducing such party, official, or candidate to do or omit to do an act in violation of the lawful duty of such party, official, or candidate, or (iii) securing any improper advantage; or

   (B) inducing such party, official, or candidate to use its or his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality, in order to assist Defendant in obtaining or retaining business for or with, or directing business to, any person; or

(3) any person, while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official, to any foreign political party or official thereof, or to any candidate for foreign political office for purposes of—

   (A)(i) influencing any act or decision of such foreign official, political party, party official, or candidate in his or its official capacity, (ii) inducing such foreign official, political party, party official, or candidate to do or omit to do any act in violation of the lawful duty of such foreign official, political party, party official, or candidate, or (iii) securing any improper advantage;

   (B) inducing such foreign official, political party, party official, or candidate to use his or its influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such

government or instrumentality, in order to assist Defendant in obtaining or retaining business for or with, or directing business to, any person.

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A), by failing to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Defendant.

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 13(b)(2)(B) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(B), by failing to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that: (i) transactions are executed in accordance with management's general or specific authorization; (ii) transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and to maintain accountability for assets; (iii) access to assets is permitted

only in accordance with management's general or specific authorization; and (iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

IV.

1. Innospec agrees to engage an independent compliance monitor (the "Monitor") within sixty (60) calendar days of the entry of the Final Judgment. Within thirty (30) calendar days of the entry of the Final Judgment, and after consultation with the Commission staff, Innospec will recommend to the Commission staff one or more qualified Monitor candidates.

2. The Commission staff retains the right to accept or reject any Monitor candidate proposed by Innospec pursuant to the Agreement. In the event the Commission staff rejects a proposed Monitor, Innospec shall propose another candidate within ten (10) calendar days after receiving notice of the rejection. The term of the monitorship shall commence upon the Commission staff's acceptance of a Monitor candidate proposed by Innospec.

3. Innospec shall retain the Monitor for a period of not less than three (3) years.

4. The Monitor's primary responsibility is to assess and monitor Innospec's compliance with the terms of this Agreement so as to specifically address and reduce the risk of any recurrence of Innospec's misconduct. During the Term of the Monitorship, the Monitor will evaluate, in the manner set forth in paragraphs 6 through 11 below, the effectiveness and implementation of the corporate compliance program, internal controls

and financial reporting policies and procedures of Innospec as they relate to Innospec's current and ongoing compliance with the anti-bribery provisions of the FCPA and other anti-corruption laws applicable to Innospec (collectively, the "anti-corruption laws") and take such reasonable steps as, in his or her view, may be necessary to fulfill the foregoing mandate (the "Mandate").

5. Innospec shall cooperate fully with the Monitor, and the Monitor shall have the authority to take such reasonable steps as, in his or her view, may be necessary to be fully informed about Innospec's compliance program within the scope of the Mandate in accordance with the principles set forth herein and applicable law, including data protection and labor laws and regulations applicable to Innospec. To that end, Innospec shall: provide the Monitor access to Innospec's documents and resources; not limit such access, except as provided in this paragraph; and provide guidance on applicable laws (such as relevant data protection and labor laws). Innospec shall provide the Monitor with access to all information, documents, records, facilities and/or employees, as requested by the Monitor, that fall within the scope of the Mandate of the Monitor under this Agreement. Any disclosure by Innospec to the Monitor concerning corrupt payments shall not relieve Innospec of any otherwise applicable obligation to truthfully disclose such matters to the Commission staff.

   a. The parties agree that no attorney-client relationship shall be formed between Innospec and the Monitor.

   b. In the event that Innospec seeks to withhold from the Monitor access to information, documents, records, facilities and/or employees of Innospec, which may be

subject to a claim of attorney-client privilege or to the attorney work-product doctrine, or where Innospec reasonably believes production would otherwise be inconsistent with applicable law, Innospec shall work cooperatively with the Monitor to resolve the matter to the satisfaction of the Monitor. If the matter cannot be resolved, at the request of the Monitor, Innospec shall promptly provide written notice to the Monitor and the Commission staff. Such notice shall include a general description of the nature of the information, documents, records, facilities and/or employees that are being withheld, as well as the basis for the claim. The Commission staff may then consider whether to make a further request for access to such information, documents, records, facilities and/or employees. To the extent Innospec has provided information to the Commission staff in the course of the investigation leading to this action pursuant to a non-waiver of privilege agreement, Innospec and the Monitor may agree to production of such information to the Monitor pursuant to a similar non-waiver agreement.

6. To carry out the Mandate during the Term of the Monitorship, the Monitor shall conduct an initial review and prepare an initial report, followed by two (2) follow-up reviews and reports as described below. With respect to each review, after consultation with Innospec and the Commission staff, the Monitor shall prepare a written work plan, which shall be submitted no fewer than sixty (60) calendar days prior to commencing each review to Innospec and the Commission staff for comment, which comment shall be provided no more than thirty (30) calendar days after receipt of the written work plan. The Monitor's work plan for the initial review shall include such steps as are reasonably necessary to conduct an effective initial review in accordance with the

Mandate, including developing an understanding, to the extent the Monitor deems appropriate, of the facts and circumstances surrounding any violations that may have occurred before the date of the entry of the Final Judgment. In developing such understanding, the Monitor is to rely to the extent possible on available information and documents provided by Innospec, and it is not intended that the Monitor will conduct his or her own inquiry into those historical events. In developing each work plan and in carrying out the reviews pursuant to such plans, the Monitor is encouraged to coordinate with Innospec personnel, including auditors and compliance personnel, and, to the extent the Monitor deems appropriate, he or she may rely on Innospec processes, on the results of studies, reviews, audits and analyses conducted by or on behalf of Innospec and on sampling and testing methodologies. Any dispute between Innospec and the Monitor with respect to the work plan shall be decided in consultation with the Commission staff.

7.  The initial review shall commence no later than one hundred twenty (120) calendar days from the date of the engagement of the Monitor (unless otherwise agreed by Innospec, the Monitor and the Commission staff, and the Monitor shall issue a written report within one hundred twenty (120) calendar days of initiating the initial review, setting forth the Monitor's assessment and making recommendations reasonably designed to improve the effectiveness of Innospec's program for ensuring compliance with the anti-corruption laws. The Monitor is encouraged to consult with Innospec concerning his or her other findings and recommendations on an ongoing basis, and to consider and reflect Innospec's comments and input to the extent the Monitor deems appropriate. The Monitor need not in his or her initial or subsequent reports recite or describe

comprehensively Innospec's history or compliance policies, procedures and practices, but rather may focus on those areas with respect to which the Monitor wishes to make recommendations for improvement or which the Monitor otherwise concludes merit particular attention. The Monitor shall provide the report to the Board of Directors of Innospec and contemporaneously transmit copies to Cheryl Scarboro, Chief, Foreign Corrupt Practices Unit, Division of Enforcement, Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549-5030. After consultation with Innospec, the Monitor may extend the time period for issuance of the report for up to sixty (60) calendar days with prior written approval of the Commission staff.

8. Within one hundred and twenty (120) calendar days after receiving the Monitor's report, Innospec shall adopt all recommendations in the report; provided, however, that within sixty (60) calendar days after receiving the report, Innospec shall notify the Monitor and the Commission staff in writing of any recommendations that Innospec considers unduly burdensome, inconsistent with local or other applicable law or regulation, impractical, unduly costly or otherwise inadvisable. With respect to any recommendation that Innospec considers unduly burdensome, inconsistent with local or other applicable law or regulation, impractical, unduly costly or otherwise inadvisable, Innospec need not adopt that recommendation within that time but shall propose in writing an alternative policy, procedure or system designed to achieve the same objective or purpose. As to any recommendation on which Innospec and the Monitor do not agree, such parties shall attempt in good faith to reach an agreement within forty-five (45) calendar days after Innospec serves the written notice. In the event Innospec and the

Monitor are unable to agree on an acceptable alternative proposal, Innospec shall promptly consult with the Commission staff. Any disputes between Innospec, on the one hand, and the Monitor, on the other hand, with respect to the recommendations shall be decided by the Commission staff in its sole discretion. The Commission staff may consider the Monitor's recommendation and Innospec's reasons for not adopting the recommendation in determining whether Innospec has fully complied with its obligations under this Agreement. Pending such determination, Innospec shall not be required to implement any contested recommendation(s). With respect to any recommendation that the Monitor determines cannot reasonably be implemented within one hundred and twenty (120) calendar days after receiving the report, the Monitor may extend the time period for implementation with prior written approval of the Commission staff.

      9.     The Monitor shall undertake two (2) follow-up reviews to carry out the Mandate. Within one hundred and twenty (120) calendar days of initiating each follow-up review, the Monitor shall: (a) complete the review; (b) certify whether the compliance program of Innospec, including its policies and procedures, is reasonably designed and implemented to detect and prevent violations within Innospec of the anti-corruption laws and is functioning effectively; and (c) report on the Monitor's findings in the same fashion as set forth in paragraph 7 with respect to the initial review. The first follow-up review shall commence one year after the initial review commenced. The second follow-up review shall commence one year after the second follow-up review commenced. After consultation with Innospec, the Monitor may extend the time period for these follow-up

reviews for up to sixty (60) calendar days with prior written approval of the Commission staff.

10. In undertaking the assessments and reviews described in paragraphs 6 through 9 of this Final Judgment, the Monitor shall formulate conclusions based on, among other things: (a) inspection of relevant documents, including Innospec's current anti-corruption policies and procedures; (b) on-site observation of selected systems and procedures of Innospec at sample sites, including internal controls and record-keeping and internal audit procedures; (c) meetings with, and interviews of, relevant employees, officers, directors and other persons at mutually convenient times and places; and (d) analyses, studies and testing of Innospec's compliance program with respect to the anticorruption laws.

11. Should the Monitor, during the course of his or her engagement, discover that questionable or corrupt payments or questionable or corrupt transfers of property or interests may have been offered, promised, paid or authorized by any entity or person within Innospec, or any entity or person working directly or indirectly for Innospec, either (a) after the date of entry of the Final Judgment or (b) that have not been adequately dealt with by Innospec (collectively, "improper activities"), the Monitor shall promptly report such improper activities to Innospec's General Counsel for further action. If the Monitor believes that any improper activity or activities may constitute a significant violation of law, the Monitor shall also report such improper activity to the Commission staff. The Monitor shall disclose improper activities in his or her discretion directly to the Commission staff, and not to the General Counsel, only if the Monitor

11

believes that disclosure to Innospec's General Counsel would be inappropriate under the circumstances, and in such case should disclose the improper activities to Innospec's General Counsel as promptly and completely as the Monitor deems appropriate under the circumstances. The Monitor shall address in his or her reports the appropriateness of Innospec's response to all improper activities, whether previously disclosed to the Commission staff or not. Further, in the event that Innospec, or any entity or person working directly or indirectly within Innospec, refuses to provide information necessary for the performance of the Monitor's responsibilities, if the Monitor believes that such refusal is without just cause, the Monitor shall disclose that fact to the Commission staff. Innospec shall not take any action to retaliate against the Monitor for any such disclosures or for any other reason. The Monitor may report any criminal or regulatory violations by Innospec or any other entity discovered in the course of performing his or her duties in the same manner as described above.

12. At least annually, and more frequently if appropriate, representatives from Innospec and the Commission staff will meet together to discuss the monitorship and any suggestions, comments or improvements Innospec may wish to discuss with or propose to the Commission staff.

13. The Monitor will be retained by Innospec for a period of not less than three (3) years from the date the Monitor is selected. Innospec may not employ or be affiliated with the Monitor for a period of not less than one year from the date of the termination of the monitorship.

V.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable for disgorgement of $60,071,613, representing profits gained as a result of the conduct alleged in the Complaint. Based on Defendant's sworn representations in his Statement of Financial Condition dated February 4, 2010 and other documents and information submitted to the Commission, however, the Court is not ordering Defendant to pay a civil penalty or pre-judgment interest and payment of all but $11,200,000 of the disgorgement is waived. Defendant shall satisfy this obligation by paying $11,200,000 pursuant to the terms of the payment schedule set forth in paragraph VI below after entry of this Final Judgment by certified check, bank cashier's check, United States postal money order or other mutually agreed means, payable to the Securities and Exchange Commission. The payments shall be made to the attention of the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a cover letter identifying Innospec as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment. Defendant shall also pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961. Defendant shall simultaneously transmit photocopies of such payment and letter to the Commission's counsel in this action. The Commission shall remit the funds paid pursuant to this paragraph to the United States Treasury.

The determination not to impose a civil penalty or require payment of pre-judgment interest and to waive payment of all but $11,200,000 of the $60,071,613 in disgorgement is contingent upon the accuracy and completeness of Defendant's Statement of Financial Condition dated February 4, 2010 and other documents and information submitted to the Commission. If at any time following the entry of this Final Judgment the Commission obtains information indicating that Defendant's representations to the Commission concerning its assets, income, liabilities, or net worth were fraudulent, misleading, inaccurate, or incomplete in any material respect as of the time such representations were made, the Commission may, at its sole discretion and without prior notice to Defendant, petition the Court for an order requiring Defendant to pay the unpaid portion of the disgorgement, pre-judgment and post-judgment interest thereon, and the maximum civil penalty allowable under the law. In connection with any such petition, the only issue shall be whether the financial information provided by Defendant was fraudulent, misleading, inaccurate, or incomplete in any material respect as of the time such representations were made. In its petition, the Commission may move this Court to consider all available remedies, including, but not limited to, ordering Defendant to pay funds or assets, directing the forfeiture of any assets, or sanctions for contempt of this Final Judgment. The Commission may also request additional discovery. Defendant may not, by way of defense to such petition: (1) challenge the validity of the Consent or this Final Judgment; (2) contest the allegations in the Complaint filed by the Commission; (3) assert that payment of disgorgement, pre-judgment and post-judgment interest or a civil penalty should not be ordered; (4) contest

the amount of disgorgement and pre-judgment and post-judgment interest; (5) contest the imposition of the maximum civil penalty allowable under the law; or (6) assert any defense to liability or remedy, including, but not limited to, any statute of limitations defense.

VI.

Innospec shall pay $11,200,000 in four installments according to the following schedule: (1) $3,100,000, within ten (10) days of entry of this Final Judgment; (2) $2,700,000 plus post-judgment interest pursuant to 28 U.S.C. § 1961 due on December 31, 2010; (3) $2,700,000 plus post-judgment interest pursuant to 28 U.S.C. § 1961 due on December 31, 2011; and (4) the balance of $2,700,000 plus post-judgment interest pursuant to 28 U.S.C. § 1961 due on December 31, 2012.

If Innospec fails to make any payment by the date agreed and/or in the amount agreed according to the schedule set forth above, all outstanding payments under this Final Judgment, including post-judgment interest, minus any payments made, shall become due and payable immediately without further application to the Court.

VII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

VIII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

Dated: 24 March, 2010

_____
Rosemary M. Collyer
UNITED STATES DISTRICT JUDGE